UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------
In re:                                    )    CHAPTER 13
                                          )
EDMUND PANTANI,                           )    CASE NO. 06-31743 (ASD)
                                          )
          Debtor.                         )    RE: DOC. I.D. NO. 9, 33
------------------------------------------------------------

**MEMORANDUM OF DECISION ON MOTIONS FOR
TURNOVER AND RELIEF FROM AUTOMATIC STAY**

The above-captioned matters are the competing requests of the Debtor and a creditor, LoRicco Tower Condominium Association (hereafter, "LoRicco"), for control of an office condominium unit.  LoRicco seeks relief from the automatic stay to obtain possession of that unit incident to its taking of title to the same under a strict foreclosure.  The Debtor, however, seeks to recover his title to the property through avoidance of the foreclosure transfer.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following factual and procedural background is derived from the stipulation of the parties, evidence received at a hearing before the Court, and the files and records of this bankruptcy case.

The subject property, formerly owned by the Debtor, is known as and numbered 216 Crown Street, Unit 4A, New Haven, Connecticut (hereafter the "Condominium Unit").  On May 1, 2006, the Connecticut Superior Court, Judicial District of New Haven, at New Haven, in an action entitled *LoRicco Tower Condominium Association v. Edmund Pantani, et al.*, Docket No. NNH-CV-05-4016276 S, granted LoRicco a judgment of strict foreclosure of a lien, with Law Days commencing on June 19, 2006.  The Debtor failed to satisfy the

judgment before his Law Day passed. Hence, on June 21, 2006, title to the Condominium Unit became absolute in LoRicco (hereafter, the "Foreclosure Transfer").

On August 1, 2006, the Superior Court issued an Execution for Ejectment, authorizing the dispossession of the Debtor from the Condominium Unit. On August 11, 2006, the Debtor, *pro se*, commenced a bankruptcy case through the filing of a Chapter 13 petition (Case No. 06-31326) (hereafter, the "First Chapter 13 Case"). On September 15, 2006, this Court dismissed the First Chapter 13 Case for failure to file Schedules, Statements and a Plan. On September 26, 2006, the Superior Court issued another Execution for Ejectment; which was ultimately stayed by the Debtor's commencement of the instant bankruptcy case through counsel on October 13, 2006. LoRicco's *Motion for Relief from Stay*, Doc. I.D. No. 9 (hereafter, the "LoRicco Motion"), was also filed on October 13, 2006, and sought relief from the automatic stay of Bankruptcy Code Section 362(a) to permit it to take possession of the Condominium Unit from the Debtor.

On November 8, 2006, the Debtor filed a *. . . Motion For Turnover of Property and Avoid Fraudulent Transfer*, Doc. I.D. No. 33 (hereafter, the "Debtor's Motion"). The Debtor's Motion alleges, *inter alia*, that the Foreclosure Transfer is avoidable as a constructively fraudulent transfer under Bankruptcy Code Section 548, and seeks to compel LoRicco to return title to the Condominium Unit to the Debtor in view of that claim.

On November 9, 2006, a preliminary hearing was held before this Court on the LoRicco Motion, *inter alia*.[1] As to the LoRicco Motion, this Court determined that there was a "reasonable likelihood" that the Debtor's position would prevail at the conclusion of a final hearing on that Motion. *Brief Memorandum of Decision on Automatic Stay Requests*, Doc.

---

[1] The docket also included the Debtor's *Motion to Extend Automatic Stay* (Doc. I.D. No. 21), which was granted by Order dated November 16, 2006 (Doc. I.D. No. 37).

I.D. No. 35, at 2. Accordingly, an Order entered (Doc. I.D. No. 36) continuing the automatic stay as to LoRicco, pursuant to 362(e)(1), to the date of this Court's ruling on the LoRicco Motion following a final hearing thereon.

The Court then held a consolidated final hearing on the LoRicco Motion and the Debtor's Motion over two days – December 7, 2006 and January 11, 2007 (hereafter, the "Hearing"). At the Hearing the Court received certain documentary evidence as well as the testimony of four witnesses.

## DISCUSSION

The motions *sub judice* are related. The Debtor's Motion asserts that the Debtor had "substantial equity" – approximately $354,000.00 – in the Condominium Unit at the time title to that property passed to LoRicco pursuant to a Connecticut strict foreclosure. If true, the Debtor argues, then grounds would exist for the avoidance of the Foreclosure Transfer as a constructively fraudulent transfer, and for recovery of that property interest for the benefit of the Debtor's bankruptcy estate, thereby facilitating his Chapter 13 Plan.

By contrast, LoRicco claims that the Debtor did not enjoy any equity in the Condominium Unit at the time of the Foreclosure Transfer. Thus, it claims, the Debtor's ownership interest cannot be recovered because the Foreclosure Transfer cannot be avoided. Because LoRicco's ownership is unassailable, it argues, relief from the automatic stay should enter "for cause", allowing it to gain possession of its property.

The only means by which the Debtor alleges that it can recover ownership of the Condominium Unit is to have the Foreclosure Transfer avoided as a constructively fraudulent transfer. LoRicco, in reliance upon Talbot v. FHLMC (In re Talbot), 254 B.R. 63 (Bankr. D. Conn. 2000) (Krechevsky, J.), believes the fact that the Foreclosure Transfer

occurred via a regularly conducted strict foreclosure essentially creates an irrebuttable presumption that the Transfer was made for "reasonably equivalent value". By contrast, the Debtor argues on the strength of In re Fitzgerald, 255 B.R. 807 (Bankr. D. Conn. 2000) (Weil, J.), that Connecticut strict foreclosure procedure does not provide adequate assurances that reasonably equivalent value is received.

Because this Court finds itself in agreement with the disposition and rationale of Fitzgerald, it concludes that despite the strict foreclosure of the Condominium Unit, the Debtor was rightfully afforded an opportunity to demonstrate that the Foreclosure Transfer was in fact for less than reasonably equivalent value. Stated differently, since in the Foreclosure Transfer the Debtor received *nothing* in exchange for the Condominium Unit, then if, at the time of the Foreclosure Transfer, there was significant equity in the property, a good faith case could be maintained for avoidance of the Foreclosure Transfer pursuant to Code Section 548(a)(1)(B). Unfortunately for the Debtor, as discussed hereafter, he enjoyed no such equity.

Based upon the evidentiary record as a whole this Court determines that the fair market value of the Condominium Unit at the time of the Foreclosure Transfer was $175,000.00. This determination is based upon the Court's view that at the time of the Foreclosure Transfer the Debtor did not possess a contractual, or other, right to convert the use of the Condominium from commercial to residential purposes.[2] Because the Condominium Unit was restricted to commercial use, and the Court received the testimony of only one expert commercial appraisal witness – Mr. Perrelli – who the Court finds to

---

[2] The Court finds that evidence offered concerning a possible agreement between the parties as to a conversion of the Condominium should not be considered, as the subject statements were made, if at all, in the context of settlement negotiations in connection with State court litigation.

have been wholly credible, then that expert's opinion of value – $175,000.00 – is conclusive with the Court.

The only remaining question is whether liens encumbering the Debtor's interest in the Condominium Unit equaled or exceeded its $175,000.00 valuation at the time of the Foreclosure Transfer. If so, then the Debtor would have had no equity in the Condominium Unit and the Foreclosure Transfer would have been for "reasonably equivalent value" within the meaning of Code Section 548(a)(1)(B).

The parties hereto have stipulated that a tax lien to the City of New Haven had a balance of $90,937.56 at the time of the Foreclosure Transfer. Evidence was also received as to the existence of a mortgage (hereafter, the "Mortgage") securing a note held by one Richard LoRicco, Sr. as trustee (hereafter, the "Trust Note"). The balance and enforceability of the Trust Note was disputed between the parties. This Court finds all of the Debtor's legal arguments as to the enforceability of the Mortgage Note to be without merit, and that the outstanding balance of the Trust Note at the time of the Foreclosure Transfer was in an amount not less than $137,000.00.[3]

---

[3] This is the balance admitted by the Debtor in his testimony. In addition, the Debtor's Motion alleges that the Condominium Unit was "subject to encumbrances totaling approximately $246,000.00".

For the foregoing reasons, this Court determines that the Debtor enjoyed no equity in the Condominium Unit at the time of the Foreclosure Transfer.  Accordingly, (i) the Debtor received "reasonably equivalent value in exchange for" the Foreclosure Transfer; and (ii) "cause" presently exists justifying relief from the automatic stay in favor of LoRicco to enable it to take possession of the Condominium Unit, for which it holds unavoidable title.  Orders effecting these determinations shall enter this same day.

Dated: October 26, 2007                                                                BY THE COURT



Albert S. Dabrowski
Chief United States Bankruptcy Judge